# NEW YORK STORE MERCANTILE COMPANY, Respondent, v. WEST, Appellant.

St. Louis Court of Appeals, May 10, 1904.

1. ATTACHMENT: Fraudulent Conveyance: Sufficiency of Evidence. In an action by attachment on the ground that defendant was about fraudulently to convey and assign his property and effects so as to hinder and defraud his creditors, the evidence is examined and held sufficient to support a verdict sustaining the attachment.

2. ———: ———: ———: Dishonored Checks. Evidence that the defendant, at the time of the sale claimed to be fraudulent, sent checks to various creditors, which were dishonored because he had no funds in the bank to meet them, was admissible upon the issue because it tended to show he was endeavoring to allay the suspicion of creditors while the trade was in progress.

3. ———: ———: Circumstantial Evidence. That a sale by a debtor of his stock of goods was fraudulent, may be proved by circumstances surrounding the transfer and need not be shown by positive testimony.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley*, Judge.

AFFIRMED.

*Faris & Oliver* for appellant.

The court erred in overruling the demurrer to the evidence at the close of plaintiff's testimony. (a) Under the two grounds for attachment upon which this suit is based the sole issue is the intent of the defendant in making the sale of his stock of goods. Was the act about to be committed wherein the proposed sale was contemplated done with a fraudulent intent or in good faith? Best & Russell Co. v. Myerfield, 77 Mo. App. 181; Hardwick v. Cox, 50 Mo. App. 507. (b) The testimony of plaintiff's witnesses failed to show directly or by circumstances an implied fraudulent intent on the part of the defendant. Lee v. David, 11 Mo. 114; McFarland v. Belos, 49 Mo. 311; Charles v. Patch, 87 Mo. 450; Krampe v. Brewing Ass'n, 59 Mo. App. 277.

*Brewer & Collins* and *David S. Lansden* for respondent.

(1) The court properly overruled the demurrer to the plaintiff's evidence. Charles v. Patch, 87 Mo. 450; McFarland v. Bellows, 49 Mo. 311. (2) Fraud is seldom proved by direct and positive testimony. It is nearly always shown by facts and circumstances attending the transaction in question. Bank v. Tobacco Co., 155 Mo. 609; Alberger v. White, 117 Mo. 347; Burgert v. Borchert, 59 Mo. 80; Hopkins v. Williams, 58 Mo. 201; Ridge v. Greenwell, 53 Mo. App. 479.

GOODE, J.—In June, 1901, and prior thereto, the appellant conducted a mercantile establishment in the town of Pascola, Missouri. He was indebted to the re-

spondent, a corporation, for goods purchased in the sum of one thousand dollars, or thereabouts. On the tenth day of that month, he contracted to sell his stock of merchandise and the store building to Elmer Stephens for $8,100, of which $7,000 went to pay for the stock and the balance for the house and lot. On June 13, three days after the sale, the respondent instituted this attachment action, alleging as grounds for issuing the writ that the defendant was about fraudulently to convey and assign his property and effects so as to hinder and defraud his creditors, and was about to remove and dispose of the same for that purpose. A plea in abatement was filed and tried before a jury and the attachment sustained. The merits of the case were submitted to the court, who rendered judgment for the respondent for the amount of its claim and interest.

An appeal was taken after the usual motions for new trial and in arrest of judgment.

The chief complaint of the appellant is that the evidence disproved the grounds of the attachment and showed beyond doubt that the sale of the stock of merchandise was made with no dishonest purpose. In support of this position appellant relies largely on an agreement between him and the purchaser Stephens made a few days subsequent to the sale, by which the proceeds of the sale were to be deposited with William A. Ward for the payment of appellant's commercial creditors, who were to be notified to furnish statements of their respective demands, which should be paid in full out of the price of the goods. That arrangement was made at the suggestion of Stephens and W. E. Talley, cashier of the bank at Caruthersville, which was a large creditor of West on overdrafts and other demands. The purchase-money was devoted first to paying the bank, and the remainder, some $6,200, was turned over to Ward, and distributed among the commercial creditors, all of whom were paid except the plaintiff and the Hargadine-McKittrick Dry Goods Company; and it is con-

tended the plaintiff would have been paid if he had not instituted this action prematurely. The plan was honest and fair, and so far as it goes supports the defense that West had no fraudulent intention when he made the sale. But there are many other facts in the record of a character to support the finding in favor of the validity of the attachment. We repeat that the arrangement for distributing the proceeds among the commercial creditors of West was not included in the contract of sale nor instigated by West himself. When it was first proposed he objected to it, saying he would take the money and pay his creditors in person. It can not be stated with certainty when the agreement was made, but there is evidence tending to show it was after this attachment was levied. What is certain is that it was a measure of precaution on the part of Stephens, which weakens its efficacy in exonerating West from a bad motive. When the proposed sale was under discussion between West and Stephens, the former represented that he only owed $2,500 commercial indebtedness, when in truth he owed over $7,300. He admitted on the witness stand the discrepancy between his representation and his debts, attempting to excuse himself by the plea that he did not remember exactly what his indebtedness was when he made the statement. That he missed the true amount by about $5,000 is a suspicious circumstance. At the time West sold out he was totally insolvent and must have been aware of his condition. While there was testimony that the prospective sale was known to the community at Pascola, there was also testimony that it was concealed by West from his creditors. A few days before it occurred he denied to William Grinstead, a traveling salesman for one of his creditors, that he was going to sell out, and after the sale was made he denied to A. P. Dorris that he had sold. Two or three days before this suit was filed, R. J. Greaney, salesman for the respondent company, was in the store and West's

son ordered a bill of goods from him, saying his father was absent at the time in St. Louis for medical treatment. On June 13, that is the day the attachment was levied, Greaney met West in Carruthersville and was told by him that he had not been to St. Louis, but had been to the country; that he had plenty of goods coming to the store and had sent Greaney's house, that is the respondent, a check for some money and would send more later, that he expected goods enough to run the store and that business was very good. When this conversation occurred West had already agreed to sell to Stephens and the day before had received a check for $500 to bind the trade. He made no mention of the transaction to Greaney but led him to believe he intended to continue the business. The check for $300 sent to the respondent went to protest. About the same time West sent checks to other creditors, all of which went to protest.

While there is some conflict in the testimony, the foregoing facts were related by witnesses, and fully authorized the submission of the issues raised by the plea in abatement to the jury and the verdict for the respondent.

The testimony in relation to the protested checks which appellant issued before the sale, was competent as a circumstance tending to show a fraudulent intention. The allegation in the affidavit for an attachment was that West was about to convey his property so as to hinder his creditors. It must be borne in mind that though the attachment was levied on the thirteenth, and the agreement for the sale was made on June 10, possession had not been delivered to Stephens, who had paid part of the purchase-money to hold the contract. That contemporaneously with the sale of the stock West sent checks to various creditors when he had no funds in the bank to meet them, tended to show he was endeavoring to allay suspicion while the trade was in progress

and was a fact to be weighed by the jury in ascertaining his motive.

Complaint is made that the court refused to instruct that if. West agreed at the time of the sale that all his creditors should be paid in full out of the proceeds, and that, if necessary, all his property should be used to pay them, and he afterwards devoted all his property for the purpose, then the sale was not fraudulent and the verdict should be in his favor. There was a lack of evidence on which to base that instruction. West did not agree that his creditors should be paid in full out of the proceeds of the sale or all his property used to pay them; at least there is no testimony of such an agreement; neither did he afterwards devote all his property to paying his creditors. An instruction was given for the respondent to the effect that fraud might be proved from the circumstances surrounding the sale and transfer of the appellant's merchandise and need not be shown by positive testimony. That instruction is the law.

No errors of moment were committed in trying this case and, in truth, part of those assigned in appellant's brief were waived on the oral argument. The principal contention was the supposed lack of evidence to support the verdict on the plea in abatement. We hold there was sufficient.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.